(No. 6353. April 15, 1937.)

FRIEDMAN BAG COMPANY, a Co-partnership, Appellant,
v. F. E. BALDWIN & COMPANY, a Co-partnership,
Respondent.

[68 Pac. (2d) 43.]

S. T. Lowe for Appellant.

Chapman & Chapman for Respondent.

GIVENS, J.—Respondent, engaged in buying potatoes in the vicinity of Twin Falls in 1934, entered into an arrangement with appellant for the purchase of potato bags to be delivered, from time to time as required, to growers, from whom respondent bought potatoes. Various deliveries were made by appellant, and intermittent payments made on appellant's account by respondent. At the close of the season appellant had a charge against respondent for a balance of $769.91 which respondent refused to pay and appellant then brought suit to recover the same. Respondent offered to let appellant take judgment for $183.86, which appellant refused, but respondent denied liability on invoices numbers 1294 and 1346 for bags delivered to one S. Southworth in March, 1935, on the ground that respondent had not authorized such deliveries.

The jury awarded appellant $183.86 and judgment was entered accordingly.

This appeal is from the judgment, and the order denying the motion for a new trial sought because of newly discovered evidence.

Appellant assigns as error the court's refusal to give its requested instructions Nos. 1, 2, 3, 4, and 5 referring to agency, and No. 6 to waiver and estoppel; in giving instruction number 4[1], and in overruling its motion for a new trial.

---

[1]"Instruction No. 4.

"You are instructed, gentlemen of the jury, that if it appears by a preponderance of the evidence that a contract was entered into between the parties here whereby the plaintiff was to keep a stock of bags at Hazelton where Southworth could get hold of them promptly, without restriction, and that in consequence of such contract plaintiff did keep a quantity of bags there, and delivered the same to Southworth as required by him, your verdict should be for plaintiff for the value of the bags so delivered and not paid for by defendant, in the amount of not less than $183.86, and not more than $769.91.

"On the other hand, if you believe from the evidence that defendant purchased bags from plaintiff for delivery to Southworth, only on specific orders from defendant to plaintiff for delivery of such bags

■ Respondent in effect admits that, if there was sufficient evidence in the record to raise the issue of agency as between Baldwin & Co. and Southworth, and sufficient evidence to sustain a verdict of agency, under proper instructions, that the requested instructions were, as a matter of law, correct, but contends the evidence is insufficient to show any agency relationship, either actual or implied, and that as to waiver or estoppel, it was not plead and there was no evidence showing sufficient knowledge on the part of Baldwin & Co. of facts and circumstances or change in position of appellant, because of any actual or implied acquiescence by Baldwin & Co. in the ordering of bags by Southworth without specific ratification, approval, or consent by Baldwin & Co., to show waiver and estoppel, and that it is not error to refuse to give instructions not responsive to or required by issues raised by the pleadings or evidence.

Appellant does not by citation of authority or argument dispute the above asserted propositions of law. The decisive question therefore with regard to the requested instructions and the claimed erroneous one given, depends entirely on whether there was sufficient evidence to present an issue of agency or sustain a finding of agency, even though there be a conflict, or the conclusion debatable, in which events it would be for the jury to solve the problem under proper instructions.

The pivotal point therefore is what evidence was there to show that Southworth had express or implied authority from Baldwin & Co., independent of Baldwin & Co.'s direction, approval, ratification, consent, or acquiescence to order the delivery of bags chargeable to Baldwin & Co.

The following *résumé* and paraphrasing of the testimony is all that is most favorable to appellant in this particular.

Appellant Friedman testified that he had the following conversation with Mathews, concededly respondent's agent with power to order or direct delivery of bags on and after Decem-

to Southworth from time to time, and further find that plaintiff delivered bags to Southworth without subsequent specific orders from defendant and that said bags, if any, so delivered without such orders were not used by defendant, your verdict should be for plaintiff, in the amount of $183.86."

ber 21, 1932. Mr. Stanley Baldwin being managing head of respondent prior to that time:

"A. He suggested that I keep a stock of bags at Hazelton where his man Mr. Southworth could get hold of them promptly.

"Q. And in pursuance of that conversation what did you do, if anything, with reference to keeping a supply at Hazelton?

"A. I stopped over a car of bags and unloaded partially, enough bags to keep the supply for a while.

"Q. Now when you would deliver bags to the customer you have stated that you took receipts from the persons receiving the bags; now did you also make any invoices of those bags?

"A. Yes, sir."

Further testimony on this point shows the particular bags about which Friedman was being questioned were not delivered from or at Hazelton, therefore not any of the bags in question, but is cited as not showing Southworth had authority to order bags:

(H. Friedman on direct examination.)

"Q. (By Mr. PORTER.) Now, in pursuance of your conversation with Mr. Rex Mathews, to which you have testified, did you make any deliveries to F. E. Baldwin & Company at Hazelton?

. . . . . . . . . . . . .

"A. I have delivered bags to Mr. Southworth as well as the warehouse for Mr. Southworth's disposal."

. . . . . . . . . . . .

"Q. (By Mr. PORTER.) Did you have any transactions with Mr. Southworth?

"A. Personally?

"Q. In your capacity of handling bags for Friedman and Company?

"A. Only through Baldwin is all.

"Q. Were you familiar with the operations in a general way, of Mr. Southworth, in buying potatoes in your community?

. . . . . . . . . . . . .

"A. No, I wasn't.

. . . . . . . . . . . . .

"Q. How does it happen this man Teuscher's name is on that slip?

"A. He give this fellow an order and he presented it to me, signed by Ves Southworth, for these bags.

"Q. When were these slips made up now, with reference to the time of delivery of the bags?

"A. At the time of delivery.

. . . . . . . . . . . . .

"Q. Mr. Lindsay, as I understand it, you had no directions or instructions, either written or verbal, from any member or officer of F. E. Baldwin & Company concerning any of these sack transactions?

"A. Through Mr. Friedman is all.

. . . . . . . . . . . . .

"Q. Do you know whether F. E. Baldwin & Company received any of these sacks, or any potatoes in these sacks?

"A. No.

. . . . . . . . . . . . .

"A. I was told to continue to deliver sacks to Ves Southworth, but to have that order, his orders OK'd either by Mr. Friedman or call up the Baldwin Company and have it OK'd, those orders that Southworth brought in.

"Q. Now in pursuance of those instructions prior to the delivery, or at the time of the delivery of the lots making up the last five bales, what, if anything, did you do toward communicating with Baldwin & Company before making those deliveries?

"A. Well, I called him on the 'phone two or three times, now, I'm not positive, and once or twice I called Mr. Friedman regarding those deliveries, those last five deliveries?

"Q. When you called on the 'phone, to whom did you talk?

"A. I'm not sure; I called for the F. W. Baldwin Company.

"Q. Are you acquainted with Mr. Rex Mathews?

"A. Not personally.

"Q. Or Mr. Stanley Baldwin?

"A. No, not personally, just know them when I see them, is all.

"Q. On those telephone calls did you talk with the office of the F. E. Baldwin & Company?

"A. Supposedly I did, that's what I asked for."

This testimony instead of showing agency shows the converse and that orders were recognized only from the respondent company, i. e., Mr. Baldwin, or Mr. Mathews, not Southworth:

"Q. What information or instructions were given you?

"A. Well, on these particular sacks, on the three calls I got through they were OK'd, it was all right to deliver the bags; however, later on I did get some refusals to deliver sacks, and I didn't deliver.

. . . . . . . . . . . . . . .

"Q. And on March 26th, one delivered to Teuscher, a bale, plain No. 2 bags; who did you call up about that?

"A. Either Baldwin or Friedman.

"Q. Which one?

"A. I wouldn't say.

"Q. How many times did you call up Baldwin?

"A. I called him up approximately five or six times.

"Q. And did you talk to him every time?

"A. I'm not positive it was him, no; somebody at the office.

. . . . . . . . . . . . . .

"Q. You presume he was; did you talk to Southworth about delivering these five bales?

"A. I talked to Mr. Baldwin and Mr. Friedman about it.

"Q. You say you talked to Mr. Baldwin?

"A. I talked to the office.

"Q. What I'm trying to find out is, did you know anybody in that office in March, this year?

"A. No, I don't know anyone now that is in the office.

. . . . . . . . . . . . .

"Q. Are your records here?

"A. No, they're in Hazelton.

"Q. Where are these orders you say Mr. Southworth gave to various people for sacks?

"A. Probably in the waste basket.

"Q. Oh, you filed them in the waste basket?

"A. Yes.

. . . . . . . . . . . . . . .

"A. I can't tell, that isn't my writing; one of my men wrote that out; when Ves came in and signed that he told us to fix that.

"Q. Told you to charge that to Baldwin?

"A. Yes.

"Q. And you charged that to Baldwin because Southworth told you to?

"A. He was the agent.

"Q. Never mind, answer the question.

"A. Yes.

"Q. You charged them to Baldwin where these instances occurred because Southworth told you?

"A. I think you will find just the one there.

. . . . . . . . . . . . . .

"Q. And did you deliver any bags to Mr. Southworth on the account of Mr. Baldwin prior to the 1st of January?

"A. Yes, sir.

. . . . . . . . . . . . . .

"Q. And some at Gooding?

"A. Yes, some at Gooding.

"Q. They were buying potatoes both places?

"A. Yes, sir.

"Q. And didn't Mr. Baldwin tell you in that conversation, here in Twin Falls, that bags weren't to be delivered to anyone except upon his special order?

"A. No, sir. (Friedman on cross-examination.)

. . . . . . . . . . . . . .

"Q. Did he take the book?

"A. No, sir.

"Q. What did he say?

"A. Oh, he said, 'we will take care of those orders.'

"Q. That is, he told you he would tell you who to deliver bags to?

"A. No, he wouldn't worry about it, that was what impressed me about it.

"Q. Did he say anything in that conversation about your not delivering bags except upon his order?

"A. No.

. . . . . . . . . . . . . .

"A. I had some with Mr. Mathews as well; I always understood that either one had the same authority as the other.

"Q. You assumed that, did you?

"A. As a matter of fact, I was getting payments from Mr. Mathews.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Well, did you understand you were to deliver bags to anybody that wanted them and charge them to the Baldwin company without any consent or approval from someone in authority there?

"A. I had understood Mr. Mathews had authority to demand bags; I didn't know of any new arrangements after December or January."

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

(Friedman on redirect.)

"A. He said, 'For heaven sake, Friedman, don't hold out these invoices, because by delivering these invoices sooner they will give us a better way of settling up our accounts with Mr. Southworth; otherwise we don't know how much bags he has taken.'

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"A. I asked him whether or not we shall continue giving Mr. Southworth any bags.

"Q. And what did Mr. Mathews say?

"A. He said, 'absolutely'; he says, 'if you stop right away we will never have a chance to catch that fellow and settle up with him.'

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. (By Mr. PORTER.) The question was, Mr. Friedman, what instructions did you give him with reference to the delivery of bags to Southworth?

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"A. I told him he was to get OK from Baldwin on each bale he was going to deliver from now on to Southworth, for Baldwin's account."

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

(Friedman on re-cross examination.)

"Q. 'If you stop right away we will never have a chance to catch the fellow'; he said, 'go on and give him the bags.'

"A. Yes, sir.

"Q. After he had said that to you why did you tell Lindsay to get an OK from Mathews?

"A. Because the very time he gave me those instructions to keep on giving him bags he told me to tell my man to call him up."

(Baldwin on direct examination.)

"Q. What was that?

"A. When he would come over for bags for potatoes which we had purchased from him he would either call up our office from some place in town and we would tell him where to go in town for the bags, either to the Ralph Pink Company or the Friedman Bag company.

"Q. And what would you tell the Friedman Bag Company in such instances as he was directed to go there for bags?

"A. Tell him how many bales and what kind of bags to deliver.

"Q. Tell the Friedman Bag Company?

"A. Yes, sir, to deliver to Mr. Southworth.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Well, did the Baldwin company have any sacks delivered to Southworth for potatoes other than the potatoes that you were buying from Southworth?

"A. No, sir, not to my knowledge.

"Q. Did you authorize any such?

"A. No, sir.

"Q. And in every instance where you authorized the Friedman Company to deliver sacks to Southworth, Baldwin & Company purchased the potatoes, or had purchased the potatoes from Southworth which were delivered to you in the sacks?

"A. Yes, sir."

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

(Baldwin on redirect.)

"Q. Well, I will ask you, was there any conversation in which Mr. Friedman told you that if he established this warehouse, if and when he established this warehouse at Hazelton, that he would hold the F. E. Baldwin & Company liable for any and all sacks that he might deliver to Southworth?

"A. No, sir."

(Mathews on direct examination.)

"Q. Did you ever have any conversation with him in which you told him you wanted him to arrange so he could deliver bags promptly to your man Southworth?

"A. No, sir, Mr. Southworth wasn't our man, we just bought potatoes from him.

. . . . . . . . . . . . . .

"Q. Was anything mentioned in that conversation, Mr. Mathews, either by yourself or Mr. Baldwin, concerning the delivery of any bags to this man Southworth?

"A. Not to him personally, just everyone.

"Q. Was his name mentioned?

"A. Not that I remember.

"Q. Now, in your, in each of these conversations that you have related, or in practically each of them, Mr. Mathews, you have testified that statements were made either by yourself or Mr. Baldwin to Mr. Friedman relative to his not delivering any bags to any person on account of the F. E. Baldwin & Company except where approval and consent or an order was given to that effect. Now, will you explain to the jury why it was that that subject was mentioned at each of these conversations?

"A. We positively didn't want any bags delivered without our consent to anybody; we had to know where these bags were going.

"Q. Had you ever had any trouble, either here or at other points, concerning the delivery of bags on your account where orders had not been given?

"A. No, sir.

"Q. Had you known of other dealers or buyers having similar trouble?

"A. Yes, sir.

"Q. Here?

"A. Yes, sir.

"Q. And what connection did that have with the fact that you reiterated these instructions to Mr. Friedman each time you had a conversation?

"A. We wanted it to be positive he didn't deliver any bags to anyone without our orders.

"Q. Now, after Mr. Baldwin left here and you became manager of the F. E. Baldwin & Company at Twin Falls, did you have any dealings with Southworth?

"A. Yes, sir.

"A. Yes, sir; I wasn't in the office when that invoice was delivered, I was out looking at potatoes, and when I came in I called Mr. Friedman on the 'phone and asked him to come to the office.

"Q. Did he come?

"A. Yes, sir.

"Q. Did you then have a conversation with him?

"A. Yes, sir.

"Q. What was that conversation?

"A. I asked him what he meant by delivering all those bags without bringing that stuff down here and he told me his men at Hazelton hadn't brought that stuff down to him, and I asked him what he meant by delivering them and he said he didn't know those bags was delivered himself, that those orders had been held up for some reason over there. I asked him if those was all the bags that he had gotten and he said positively it was, that there was no more bags out over there."

Plaintiff's exhibit "D" contains various invoices, No. 1346 and No. 1294, the ones in controversy, being as follows:

"FRIEDMAN BAG COMPANY

Invoice No. 1346
Terms Net
Date Ap. 9 1935     via Hazelton
Delivery ticket No. 931,33,36

Sold to F. E. Baldwin Co.
Address        Twin Falls        Folio
                                              37

| Bales | Quantity | Description | Price | Amount |
|-------|----------|-------------|-------|--------|
| 5 | 1800 | plain standards | 7400 | 133.20 |

$133.20

Make all Remittances to T. F."

"FRIEDMAN BAG COMPANY

Invoice No. 1294
Terms Net
Date 3–28 1935          via Southworth

Sold to F. E. Baldwin Co.
Address (Hazelton Account) Twin Falls

| Bales | Quantity | Description | Price | Amount |
|-------|----------|-------------|-------|--------|
| 17 | 6120 | plain standards | 74.00 | 452.88 |
|    |      | Deliveries, 907 8, 10, 11, 12 |  |  |
|    |      | 913, 15, 16, 17, 18, 19, 20, 21, |  |  |
|    |      | 924, 26, 28, 30, |  |  |

$452.88

Make all Remittances to Twin Falls."

and it is apparent that there is nothing on their face to show that Southworth had authority to order bags as respondent's agent or representative. And the same is true from a consideration of No. 1051, attached to and a part of plaintiff's exhibit "D," reference to the latter invoice being merely for purposes of illustration.

Plaintiff's exhibit "C" contained delivery receipts, there being four connected with invoice No. 1346, under dates of April 1, 2, 5, and 9, 1935, and seventeen with regard to No. 1294, with dates of March 2, 2, 5, 6, 7, 8, 11, 12, 12, 12, 13, 15, 16, 22, 23, 26, and 28, 1935.

With the exception that the parties who signed and the number of bags and the dates are different, all are substantially in the same form, and a copy of one suffices:

"FRIEDMAN BAG COMPANY
Dealers in
BAGS OF ALL KINDS
Los Angeles, Calif.
Branch at

Idaho, Falls, Idaho, April 9, 1935

Sold to F. E. Baldwin          Invoice No. 1346
Address_____ City Hazelton
Salesman_____ Shipped Via _____     Customer's
                                          Order No.____

| Quantity | Description | Bales | Lot No. |
|----------|-------------|-------|---------|
| 360 | plane No 2 | 1 | Stand. |
| 360 | plane No 2 | 1 | Stand. |

(signed)   J. R. TEUSCHER

Received the Above mdse.,
in good condition

By S. Southworth

No. 937."

These are nothing more than receipts signed by those who received the merchandise and contain nothing to indicate who ordered them or who had authority to order the bags.

The only evidence, or at least the evidence which approaches nearest to showing that Southworth had authority from Baldwin & Co. to order bags on his own initiative, is the testimony of Friedman to this effect:

"Q. Isn't this the way it was done, Mr. Friedman,—when they wanted bags delivered to anyone, either at Twin Falls, Hazelton or Gooding, either Mr. Baldwin or Mr. Mathews would call up and tell you they wanted so many bags delivered to so and so at such point?

"A. No, sir, only for deliveries in town; where Hazelton and Gooding was already authorized before, especially Hazelton.

"Q. They never told you anything about delivering any particular bags at either Hazelton or Gooding?

"A. No, sir, unless we were out of bags; if we were out of bags and they wanted special kind of bags they would tell me, and say, 'I want a certain kind of bags down there.' "

Appellant contends this shows that appellant delivered bags to Southworth which were thereafter paid for by respondent without respondent having itself, independently of Southworth's ordering thereof, requested delivery of the bags to him.

Mathews testified to the contrary:

"Q. These bags that were delivered to Southworth for the purchase of potatoes shown by Exhibit 1, how did you order those bags delivered to Southworth?

"A. Well, we either called the Friedman Company or the Pink Company, or Mr. Sande down here. We had bags at three different places for delivery.

"Q. I mean, now, these bags that Southworth got out of the Hazelton warehouse, how were they ordered delivered to Southworth?

"A. They was ordered through Twin Falls here; we would call Mr. Friedman here, either him or the warehouse, and on the times we couldn't get him we would call the warehouse.

"Q. That is the Twin Falls warehouse?

"A. Yes, sir.

"Q. But you didn't call the warehouse at Hazelton?

"A. No, sir.

"Q. Do you remember about when it was this warehouse at Hazelton was established by Mr. Friedman?

"A. No, sir, I don't.

"Q. Do you remember when it was or about when it was that they began delivering bags from that warehouse for potatoes purchased by you and on your order?

"A. No, sir, I don't, because all the orders were placed here; the invoices was delivered here."

It will be noticed that Friedman did not testify that Southworth gave the orders for the delivery of bags at Hazelton and it seems to us that this testimony is only inferential and not sufficiently definite or explicit to inject into the case either agency, waiver, or estoppel, especially in contemplation of the following testimony of Lindsay, manager of the Bean Growers Warehouse Corp. at Hazelton, who delivered the bags for appellant:

"Q. Mr. Lindsay, as I understand it, you had no directions or instructions, either written or verbal, from any member or officer of F. E. Baldwin & Company concerning any of these sack transactions?

"A. Through Mr. Friedman is all.

"Q. You received your directions and instructions from Mr. Friedman?

"A. Yes, I was handling the bags for him.

"Q. And in what manner did you receive those instructions from him, that is, by letter, 'phone, or how?

"A. Well, all three ways, at different intervals.

"Q. He would direct you at various times to deliver so many bags to Southworth? .

"A. Yes.

. . . . . . . . . . . . . . .

"Q. (By Mr. PORTER.) Now, Mr. Lindsay, calling your attention to the last five bales of bags delivered to Mr. Southworth, state whether or not you had any communications with F. E. Baldwin & Company concerning those bags.

"A. Over a telephone, yes.

"Q. Had you received any instructions from Mr. Friedman just prior to the delivery of the last five bales, concerning the delivery of bags to Mr. Southworth?

"A. Yes, I did.

"Q. And what were those instructions?"

(See quoted part of direct examination of Friedman, *supra*.)

Thus instruction No. 4 covered the issues.

In connection with this phase of the testimony appellant asked for a new trial for the purpose of producing the testimony of one C. S. Burkhalter, foreman, and Edward D. Dakin, bookkeeper and office man of the Bean Growers Warehouse Corp.:

"That during said period from January 1, 1935, to March 28, 1935, the affiant at no time received a telephone call or personal message for delivery to the Friedman Bag Company or to Clive J. Lindsay at Hazelton authorizing and directing the Friedman Bag Company, or its representative, to deliver bags to S. Southworth at Hazelton, Idaho, for the account of F. E. Baldwin & Company, or otherwise."

The testimony which appellant thus wanted to introduce was to the effect that no orders had been telephoned by Baldwin & Co. to the Bean Growers Warehouse Corp. at Hazelton, but such testimony would not contradict the evidence on the part of respondent because Mathews testified himself that he did not telephone the warehouse at Hazelton, that his communications were with Friedman:

"Q. But you didn't call the warehouse at Hazelton?

"A. No, sir."

Appellant at all times knew that its bags were warehoused with the Bean Growers Warehouse Corp. in Hazelton. The trial began Friday, November 8, 1935. Baldwin and Mathews, witnesses for respondent, testified on November 9th, at which time appellant was apprised of the dispute in the testimony and the issue of authority thus raised. At 12:00 o'clock noon, November 9th, the case was continued until November 12th at 10:00 o'clock, thus the case was adjourned over Sunday and November 11th, Armistice Day, and while both days were holidays, appellant, prior to coming to trial and at any other time prior to asking for a new trial, did not ask for a continuance, assert any surprise, or indicate it needed further time to secure the witnesses asked for in the motion for a new trial.

■ ■ There is thus justification for sustaining the trial court's denial of motion for new trial in that appellant could and should have asked for a continuance or could have learned of the evidence prior to the completion of the original trial (*Montgomery v. Gray*, 26 Ida. 583, at 586, 144 Pac. 646; *Stolz v. Scott*, 28 Ida. 417, 154 Pac. 982; *Amonson v. Stone*, 30 Ida. 656, 167 Pac. 1029; *Haydon v. Branson*, 33 Ida. 368, 195 Pac. 545; *Caravelis v. Cacavas*, 38 Ida. 123, 220 Pac. 110) and the trial court's denial of the motion for a new trial will not be reversed in the absence of a showing of an abuse of discretion. *Livestock Credit Corp. v. Corbett*, 53 Ida. 190, 22 Pac. (2d) 874:

" . . . . The general rule is that in order to warrant the granting of a new trial on the ground of newly discovered evidence it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not

have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issues; and (5) that it is not merely cumulative or impeaching."

The judgment is therefore affirmed. Costs awarded to respondent.

Morgan, C. J., Holden, Ailshie, and Budge, JJ., concur.