(February 12, 1910.)

EDWARD DARBY and W. D. SCOLLARD, Partners Under the Firm Name of DARBY & SCOLLARD, Respondents, v. JOSEPH T. PENCE, Mayor, and ROBERT AIKMAN, J. A. BLOMQUIST, W. S. WALKER, and E. J. McAULEY, as the Common Council of Boise City, Ada County, Idaho, Appellants.

[107 Pac. 484.]

INTOXICATING LIQUORS — MUNICIPAL CONTROL—LICENSE—MANDAMUS.
    1. Under the provisions of subd. 8 of sec. 42 of the charter of Boise City, power and authority is granted to the municipality to license, tax, regulate, restrain and control the sale of intoxicating liquors.

Points Decided.

2. The provision in sec. 466 of the ordinances of Boise City as follows, "The common council shall, if the applicant for a license is, in the opinion of the council, a proper person to carry on a liquor business, as mentioned in the ordinances of Boise City, make an order that the city clerk issue a license to such person or persons upon the payment to him of the sum required for the particular kind of license applied for," confers upon the council the right and power to determine the qualification or fitness of an applicant to receive a license, and the action of such council in such matter cannot be controlled by writ of mandate.

3. Where a statute or city ordinance provides that the authority empowered to issue a license to sell intoxicating liquor may determine the expediency of issuing such license or the qualification or fitness of an applicant, and no provision is made for reviewing such action, the determination of such question by such authority is final and cannot be controlled by *mandamus*.

4. Where a court or board of officers is vested with a judicial discretion as to the grant or refusal of license, and in the exercise of such discretion examines and rejects a particular application for license, *mandamus* will not lie to review the case and compel the granting of a license, unless it appear that such discretion has been abused and the court, board or officer acted arbitrarily or in an unlawful manner.

5. Where, under the ordinances of Boise City, the common council of said city have rejected an application for a license to sell intoxicating liquors, upon the ground that the applicant is an unfit person to carry on such business, such action of the council will not be reviewed by the court upon an application for a writ of mandate, even though it is alleged in such application that the applicant was a person of good moral character and fit to carry on such business.

6. It is now recognized as the law of this state that no person has any vested or inherent right to engage in the sale of intoxicating liquors, and that the business is entirely under the control of the state, and the legislature having vested the city of Boise with the power to tax, regulate, control and restrain the business, the power, to the extent of the grant thus vested, will not be reviewed or interfered with by the courts as long as the council in exercising such power does not run counter to the provisions of the constitution and laws of the state.

7. Under the provisions of the ordinances of Boise City, regulating applications for license to sell intoxicating liquors, the applicant is not entitled to a hearing upon such application, and the ordinance leaves entirely to the council the method or means by which they may satisfy themselves as to the fitness or qualification of the applicant to receive a license.

8. The provision in sec. 466 of the ordinances of Boise City, making the council the judge of the fitness of an applicant to receive a license, and giving such council the right to refuse a license to all persons deemed by them unfit to carry on such business, thereby prohibits such persons from engaging in such business, but is not a prohibition against the business.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

Application for writ of mandate to compel the common council of Boise City to issue to respondents a license to sell intoxicating liquor. Judgment for plaintiffs. City appeals. Reversed.

F. B. Kinyon, for Appellants.

In those jurisdictions where the courts have interposed to prevent an abuse of the discretion of inferior tribunals, such as county courts, city councils, etc., in granting or refusing liquor licenses, it has also been held that the record must clearly show an arbitrary and unlimited exercise of such discretion. (*Hoglan v. Commonwealth*, 3 Bush (66 Ky.), 147; *Zanone v. Mound City*, 103 Ill. 552; Merrill on Mandamus, sec. 41, p. 45, citing *State v. Benton*, 25 Neb. 834, 41 N. W. 793; *Davis v. County Commissioner*, 63 Me. 396; *State v. Kirke*, 12 Fla. 278, 95 Am. Dec. 314; *Vincent v. Bowes*, 78 Mich. 315, 44 N. W. 276; *Manor v. McCall*, 5 Ga. 522; *Detroit etc. Co. v. Gartner*, 75 Mich. 360, 42 N. W. 968.)

The right to keep a dramshop is a municipal privilege and not a legal right. (*State ex rel. Gazzalo v. Hudson*, 13 Mo. App. 61.)

Hawley, Puckett & Hawley, for Respondents.

Where the authorities of a city have in the arbitrary exercise of their discretion refused, without sufficient reason, to issue a dramshop license to one admitted to be a suitable person, they will be compelled by *mandamus* from the su-

preme court to issue such license. (*Zanone v. Mound City*, 103 Ill. 552.)

The city council cannot arbitrarily refuse to issue a license to one man or firm and grant a license to others; there must be some good reason actuating the city authorities in such refusal, especially where the business has already been carried on by the applicants. (*East St. Louis v. Wehrung*, 50 Ill. 28; *People ex rel. Besse v. Village of Crotly*, 93 Ill. 180; *Prather v. People*, 85 Ill. 36; *Hoglan v. Commonwealth*, 3 Bush (66 Ky.), 147; *Thompson v. Koch*, 98 Ky. 400, 33 S. W. 96; *In re Excise License*, 38 N. Y. Supp. 425; *Jones v. County Commrs.*, 106 N. C. 436, 11 S. E. 514.)

What is reasonable or unreasonable is a question of fact according to circumstances, and it is the duty of the court to determine the question as a question of fact, allowing for circumstances. (*Champer v. City of Greencastle*, 138 Ind. 339, 46 Am. St. 390, 35 N. E. 14, 24 L. R. A. 768; *State v. Borough of Washington*, 44 N. J. L. 605, 43 Am. Rep. 402.)

STEWART. J.—This is an application for a writ of mandate, by which petitioners seek to compel the mayor and council of Boise City to issue to them a license to retail intoxicating liquors. It appears from the affidavit that the petitioners are partners doing business under the name and style of Darby & Scollard, and are engaged in the retail liquor or saloon business, and have been so engaged for more than two years, at 825 Main street, Boise City, Idaho; that on July 1, 1909, the petitioners paid the United States revenue license provided for and made necessary under the laws of the United States, entitling them to conduct the business of retail dealers until July 1, 1910, and on or about Apr. 1, 1909, paid the county and state licenses provided for by the laws of Idaho, and that such license expires on Apr. 1, 1910, and that both the United States and state licenses were in full force and effect at the time they made application, under the ordinances of Boise City, for a city license; that on Sept. 29, 1909, the petitioners filed with the clerk of Boise City, for presentation to the mayor and common council, an applica-

tion and request for license to carry on said retail liquor and saloon business for six months from and after, and inclusive of, Oct. 1, 1909, and paid to the city clerk the sum of $600, the same being the semi-annual license for carrying on said business for six months, and requested the mayor and common council for a license authorizing them to conduct the retail liquor business in said city; that at a regular meeting of said city council held on Apr. 30, 1909, the matter of granting a license for said business to the petitioners and others came on for hearing, and that thereupon the following proceedings were had with reference thereto by said common council, to wit:

"On motion of McAuley the licenses of the following retail liquor dealers were denied, for the reason that the applicants were not considered proper persons to carry on the liquor business: Hillock & Smith, Arc Light Saloon; Bedal Bros., Montreal Saloon; S. A. McLaughlin, Mint Saloon; Darby & Scollard, Maple Bar; W. H. Rich, Alcove Bar."

And thereby denied said application and request of petitioners for license; that thereafter and on Oct. 1, 1909, the plaintiffs made further demand that such license issue and said request was denied, and petitioners requested the common council of Boise City for a hearing for the purpose of determining whether or not there was legal cause or reason for denying such license, and said request was denied. The petitioners then allege that they have been engaged in the retail liquor business in Boise City for the last two years; that they have not knowingly violated any statute of the United States or the state of Idaho or any ordinance of Boise City, and that "each of them is a fit and suitable person to conduct such business, and that no interest of said Boise City would be in any way subserved by reason of the plaintiffs not receiving the license herein mentioned"; that no complaint has ever been made to the mayor or common council for any infraction of the laws or ordinances, and no complaint or charge has ever been made or filed showing or tending to show that the plaintiffs and petitioners, or either of them, were not fit persons to carry on said business; that they have a large

amount of money invested in their said business, and that the business is a profitable source of revenue and the goodwill is of great value; that by reason of the refusal to issue such license, they are unable to continue their business without rendering themselves liable for violating the ordinances of said city; that a portion of their stock is of a perishable character and would deteriorate in value, and that their business will be ruined and the profits cut off unless the license is issued; that no notice was given by the mayor or common council or by anyone acting for them or in their behalf that they would be refused permission to carry on their said business, and the first intimation they had received was the refusal of the council to grant such license, and because of the failure to notify the petitioners or to grant such license, they made no preparation for closing their business or disposing of their stock and made arrangements to continue such business; "that plaintiffs have in all things in regard to the issuance of said license complied with all the terms and conditions of the statutes of the United States and of the state of Idaho, and the ordinances of Boise City; that they are, and each of them is, of good moral character and fitted to carry on such business and fully qualified thereunder; that no charges have ever been filed against them, or either of them, for violation of any ordinance of Boise City or any law or statute of the United States or of the state of Idaho; that no hearing was had or notice given to them of any charges preferred or to be preferred against them; that plaintiffs and petitioners were at said time and now are ready and willing to meet any charges that may be made against them and to show their qualifications for carrying on said business and their good moral character, and that the defendants refused them a hearing thereof; that the action of defendants in refusing said license was an arbitrary and capricious exercise of authority, without reason, legal or otherwise, therefor, and an unjust discrimination against the plaintiffs and petitioners"; that the application for a license by petitioners, if granted, would not exceed the limit fixed by an ordinance; that the license fee paid by petitioners is still retained by

the clerk of said city and has not been returned to the petitioners. To this affidavit or petition a general demurrer was filed and overruled, and the appellants declined to plead further and judgment was rendered in favor of respondents, ordering that a writ of mandate issue. From this judgment this appeal was taken.

It is the contention of appellant that the charter and ordinances of Boise City vest in the mayor and common council of said city the absolute discretion to grant or refuse an application for license to sell intoxicating liquors, and that the action of the mayor and common council in such matter cannot be controlled by a writ of mandate; while on the part of the respondent it is the contention that while there is vested in the mayor and common council a certain discretion as to granting or refusing an application for the sale of intoxicating liquors, yet, under the facts shown by the affidavit in this case, it clearly appears that the mayor and common council acted arbitrarily and without reason or excuse in refusing to issue a license to the petitioners, in which case their action can be controlled by writ of mandate. By the provisions of sec. 5 of the charter of Boise City, the power and authority granted to the municipality is vested in the mayor and common council, and in enumerating such powers subd. 8 of sec. 42 of the charter provides:

"To license, tax, regulate and restrain barkeepers, saloon-keepers, dealers in and manufacturers of spirituous, vinous or malt liquors, and the places where the same are kept for sale, or in any manner disposed of, and to regulate and control the location of such places and the sale and disposal of such liquors; . . . . and for the purpose of this act to define and declare who is a barkeeper or dealer in spirituous, vinous or malt liquors, and what is a barroom, drinking-shop or place where spirituous, vinous or malt liquors are kept for sale or disposed of, . . . . and to cancel and revoke any such license, in their discretion."

The respondents in their affidavit, upon which the application for the writ of mandate is founded, incorporate therein and make a part thereof the ordinances of Boise City in rela-

tion to the granting of a license to sell intoxicating liquors. Sec. 466 as thus set forth is as follows:

"All persons selling, or giving away, spirituous, malt or fermented liquors or wines, to be drank in or about the premises where sold, shall pay a semi-annual license of $600.00 cash in advance, on the first day of October, and April of each year. . . . . The common council shall, if the applicant for a license is, in the opinion of the council, a proper person to carry on a liquor business, as mentioned in the ordinances of Boise City, make an order that the city clerk issue a license to such person or persons upon the payment to him of the sum required for the particular kind of license applied for. . . . . *Provided, further;* That no license for the sale of liquor shall be issued for a less period than six (6) months."

It will be observed that by the terms of this ordinance the common council is made the‡sole and exclusive judge of the fitness of an applicant to receive a license, and by reason of this provision found in the ordinance the facts of this case do not bring it within that rule of law announced by many courts which hold that where a city enacts an ordinance regulating the liquor business and provides the methods and means for securing a license, and in which the applicant complies with all the regulations of such ordinance, and the license is refused, that *mandamus* will issue to compel such council to issue such license. For this reason many of the cases cited by counsel for respondent are not applicable to the facts of this case, and in discussing the law of this case we shall only deal with such cases as were considering a state of facts similar to those contained in the affidavit in this case. The council, therefore, having provided by ordinance that a license will not issue unless the common council be of the opinion that the applicant is a fit person to carry on such business, and it appearing as alleged in the affidavit that the common council had determined that question and decided that the respondents were unfit persons, the question arises whether the courts will review the determination of such question by the common council.

Counsel have not called our attention to any decision, and from our investigation of the subject we have been unable to find any, which goes to the extent that *mandamus* will lie to compel a municipality to issue a license, when the applicant fails to bring himself within the provisions of the ordinances of such city governing the issuing of such licenses. This court had this question under consideration in the case of *Perkins v. Loux,* 14 Ida. 607, 95 Pac. 694, and in the majority opinion it is held:

"The language of the ordinance we do not think is mandatory, and sec. 116 provides that 'Upon the granting of the license petitioned for,' etc., but does not provide that it must be granted to disreputable characters whose conduct of the business would menace the peace of the city. It does not provide that the license must be granted upon presenting the petition. If the city council had no discretion in the matter, but must grant the license, the ordinance in question would have provided that upon filing a proper petition a license must issue."

The writer of this opinion, however, was of the opinion that inasmuch as the statute granted to the city certain powers and required such powers to be exercised by ordinance, and the city having passed an ordinance regulating the issuance of licenses to sell intoxicating liquors, that upon the petitioners complying therewith the council had no authority to reject such application upon grounds and reasons not covered by the ordinance. While the majority of the court were of the opinion that notwithstanding the fact that an applicant for license to sell intoxicating liquors had complied with the ordinances, yet the council had the power to refuse a license for any other good or sufficient reason appearing to them, such as the unfitness of the applicant.

In the case now under consideration, however, the petitioners show by the facts alleged in their affidavit that they have not brought themselves within the provisions of the ordinances of Boise City. They show that they have not satisfied the city council that they are fit persons to carry on the business of selling intoxicating liquors. They expressly

allege that the city council refused to grant them a license because in the opinion of the council they were not fit persons to receive the same, and under the ordinance the council were made the sole judges. While the respondents allege in their affidavit that they were persons of good moral character, fit and qualified to carry on the business of selling intoxicating liquor, and that they had previously been licensed by the city to conduct such business, and that they have received a license from the government of the United States and also the state authorizing them to carry on such business, yet these allegations do not bring the case within the requirements of the ordinance. Under the ordinance, it is not a question as to whether the applicant deems himself, or in fact is, of good moral character and fit to carry on the business, but is he such in the opinion of the common council. The ordinance does not provide that a license shall be issued to a person possessing such qualifications, when in the opinion of the council such person is not fit to carry on such business. So it is immaterial whether the applicant be a man of good moral character and fit to carry on the business, in the opinion of the public generally, or in the opinion of the court; he must be fit in the opinion of the council to entitle him to a license. If the fact that the applicant was a man of good moral character and fit to carry on the business, and such question was one which might be reviewed in the courts, then instead of the common council of Boise City being the judge of the fitness of an applicant, as provided in the ordinance, the court would become the judge and the provisions of the ordinance would be of no force or effect whatever. Had the common council intended to leave the question of the applicant's fitness to receive a license open to investigation in the courts, then the ordinance would have so provided. In other words, had the ordinance provided that a license should be issued to a person of good moral character and fit and qualified to carry on the liquor business, then it might be the courts would review the qualification and fitness of such person, but that is not this case, as the ordinance in direct terms commits the question of fitness solely to the judg-

ment of the common council, and to permit the court to review the action of the council in determining this matter, would annul and set aside the express provisions of the ordinance.

We have selected a few cases which we deem particularly in point, inasmuch as the courts were considering statutes and ordinances which made the court or board authorized to issue a license the sole judge as to the expediency of issuing the same, and in each of these cases the court held that when the law provides that the authority issuing the license should be the judge of the fitness of the applicant or the expediency of issuing the same, the discretion thus vested could not be controlled by writ of *mandamus*. It no doubt was the intention of the city council of Boise in enacting the ordinance under consideration to place the sale of intoxicating liquors in the hands of law-abiding persons who, in the judgment of the council, would obey the law and conduct orderly places of business, and in order to be perfectly safe in such regulation the council by proper ordinance reserved to itself the right to be the sole judge as to the fitness of an applicant to receive a license. When a statute or city ordinance provides that the authority empowered to issue a license to sell intoxicating liquors may determine the expediency of issuing such license, or the qualification or fitness of the applicant, and no provision is made for reviewing such action, the determination of such question by such authority is final and cannot be controlled by *mandamus*.

In the case of *State v. Common Council*, 64 Minn. 81, 101 N. W. 1063, the supreme court of Minnesota had under consideration a question very much like the one presented in this case. The ordinances of said city among other things provided that every person, who should apply to the common council for a license to sell intoxicating liquors and whose application shall be approved by the council, shall be entitled to receive the same subject to the conditions and restrictions named and specified in other sections of the ordinance. In construing this ordinance the court says:

"The further point made by relator that, under section 2 of the ordinance above quoted, he was entitled to a license as a matter of right, is not well taken. The section provides that every person who shall apply to the common council for a license to deal in intoxicating liquors, and whose 'application shall be approved by the common council,' shall be entitled to receive the same.

"It is urged that the language, 'shall be entitled to receive the same,' makes it mandatory upon the council to issue all licenses where the applicants comply with all the preliminary conditions prescribed by the ordinance. This language, however, applies only to an applicant whose application 'shall be approved,' and whether any particular application shall be approved rests in the sound judgment and discretion of the council. If one be approved, and the recorder or mayor of the city should refuse to issue the license, *mandamus* would lie to compel those officers to perform their duty and issue it; but *mandamus* will not lie to compel the approval of an application, where, as in this case, the granting or refusing of the same involves an exercise of judgment and discretion on the part of the council."

In the case of *People v. Board of Excise,* 16 N. Y. Supp. 798, the court had under consideration the discretion vested in the excise board, under a statute which provides that no license should be granted unless the board of excise "shall be satisfied, upon examination, *inter alia,* that a license may properly be granted for such sale in the place proposed." And the court said:

"The board of excise has assigned, as its reason for rejecting the application of the relators, that there were already licensed saloons in actual operation on each of the other three corners of Columbia place and State street. We think that is equivalent to a finding by the board that a license might not properly be granted in the place proposed. We cannot say that the reason assigned for refusing the license was not 'good or valid.' As before stated, the power is vested by the statute in the board 'to regulate' the sale of liquor, and it was clearly within the power vested in the

board by the statute, in regulating the sale of intoxicating liquors, to hold, in the exercise of its discretion, that liquor stores on three out of four corners of intersecting streets rendered the fourth corner a place where a license might not properly be granted. It never was intended by the statute to constitute the judges of the courts excise commissioners, but only to give the courts a power of review over any abuse of the discretion vested in and exercised by the board of excise.''

Discussing this same question in the case of *People v. Murray*, 38 N. Y. Supp. 177, the superior court of New York City says: ''It appears, therefore, by the return, that the commissioners exercised the discretion vested in them by law; and, that discretion not having been abused, the refusal to grant a license to the relator is not arbitrary or capricious, under the act.''

In the case of *Heblich v. Judge of Hancock County Court* (Ky.), 10 S. W. 465, the court of appeals of Kentucky holds:

''It is said by the appellee that the power to grant such a license is with the trustees of the town, and not with the county judge, but he has failed to call the attention of this court to the provisions of the town charter, or the act under which this power is conferred. It is immaterial, however, in determining the question presented here, where this power is lodged. The county judge nor the trustees are required to grant such a license, unless it shall be deemed expedient to do so. They are to judge the necessity of such a grant, and not this court.''

The statute upon which the above decision was rendered is as follows: ''The privilege to sell spirituous liquors shall not be implied or embraced in any license to keep a tavern, as heretofore, nor in a license to keep any coffee-house, boarding-house, restaurant, or other place of entertainment, licensed by any court, or the trustees or other authority in any town or city, unless the said court, trustees or other authority shall deem it expedient so to do, and shall specify said privilege in said license.''

In the case of *State v. Commrs. of Cass Co.*, 12 Neb. 54, 10 N. W. 571, the supreme court of Nebraska had under review the following statute: "The county board of each county may grant a license for the sale of malt, spirituous, and vinous liquors, if deemed expedient, upon the application by petition of thirty of the resident freeholders of the town," and held, "This gives the county commissioners discretion in issuing licenses. If, in their opinion, it is inexpedient to issue such licenses, *mandamus* will not lie to compel them. The statute has placed the whole matter, so far as it relates to counties, under the control of the county commissioners; and in case they refuse for cause to issue license, their action thereon, being discretionary, cannot be controlled by *mandamus.*"

In 23 Cyc. 137, the author cites many authorities and summarizes the conclusions as follows: "Where a court or board of officers is invested with a judicial discretion as to the grant or refusal of licenses, and where in the exercise of such discretion it has examined and rejected a particular application for license, *mandamus* will not lie to review the case and compel the grant of a license, unless it shall appear that such discretion has been abused or exercised in an arbitrary and unlawful manner."

The correct rule as applied to this case was announced by Justice Field in the case of *Crowley v. Christensen*, 137 U. S. 86, 11 Sup. Ct. 13, 34 L. ed. 620, as follows: "The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the state. . . . ."

Counsel for respondents cite the case of *Zanone v. Mound City,* 103 Ill. 552, and urge that case is decisive of the questions involved in the case now under consideration. An exam-

ination of that case, however, we think clearly shows that the questions the court was dealing with are very much unlike the questions involved in this case. In that case the city council passed a general ordinance providing for the issuance of a license to keep dramshops upon certain conditions set out in the ordinance, and it is alleged that the petitioners conformed with all the conditions and requirements of the ordinance and that their application was denied without any reason being assigned, and about the same time that other licenses were issued under the same ordinance; that the applicant was in every respect a suitable person to be licensed, and that he was the only person whose application for license had ever been refused, and because of such facts the record showed an arbitrary discrimination on the part of the council, and no excuse or explanation was shown or offered for their action; and in the course of the opinion the court said: "It is claimed that municipal authorities may exercise a discretion in such matters. We do not decide that they may not refuse license to persons of such habits and character as render them unfit persons to be licensed. In this case the authorities had not decided that the applicant was not a fit man to be licensed. On this record it stands confessed that the applicant is a suitable person to be licensed."

This statement of the court shows very clearly the difference between that case and the one under consideration. In the Zanone case it does not appear that the council were made the sole judges of the fitness of the applicant to receive a license as is the case at bar. In the Zanone case it also appeared that the license was refused without any reason being given or any justification being shown by the city; while in the case at bar it appears that the license was refused because the applicants were unfit persons to receive the same. The arbitrary action of the council in the Zanone case appeared by reason of the fact that they gave no reason for their action and under like conditions granted licenses to other applicants, and thereby showed a discrimination against the applicant; and the court expressly held that they did not decide that the council might not refuse a license to persons of such

habits and character as rendered them unfit persons to be licensed. From this analysis of that case it clearly appears that it is not an authority which should guide this court under the facts of the case at bar.

The case of *Hoglan v. Commonwealth,* 3 Bush (66 Ky.), 147, we think, is also clearly distinguishable. The court said:

"Though the discretion ,conferred by law on the county courts is broad, it should not be exercised in an arbitrary and unlimited manner; and when such an exercise of the power is manifested, this court would interpose; but in this case, the evidence fails to show that there was any necessity for the grant, or that travelers were put to any inconvenience from the refusal of the court to grant the privilege to appellant; and as this court cannot inquire into the motives of the county judge by which he was influenced, but must decide the question upon the 'evidence as presented, and the law applicable thereto, we cannot say that an abuse of the discretion conferred has been made out."

Applying the rule thus announced to the case under consideration, we may safely observe that inasmuch as it appears from the allegations of the affidavit that the common council rejected the respondents' application on the ground that they were not fit persons to receive such license, this court will not inquire into the motives or the facts upon which the council acted, but will decide the case upon the record as it appears and the law applicable thereto, and from such facts we cannot say that the common council abused the power given them by the ordinance in rejecting the respondents' application.

Counsel for respondent also cite the case of *In re Excise License,* 38 N. Y. Supp. 425, but in our view, that case rather than supporting the respondents' contention is against it, for the court says:

"But there are many questions concerning which the action of excise boards will not be disturbed. Such boards must, in the nature of things, determine whether the applicant possesses the qualifications required by section 18 of the act, whether the place is one which ought to be licensed, whether its proximity to a church or schoolhouse or to other saloons

in the neighborhood makes it unwise and improper to grant the occupant a license. The board, with its retinue of inspectors, its facility for inquiry by evidence or otherwise, is peculiarly qualified to pass upon these questions; and their findings thereon must, in all but extreme cases, meet with approval. At all events, *mandamus,* which is a writ resting largely in discretion, will lie only where the refusal to license is placed on grounds which are clearly arbitrary or illegal, and not where the discretion of the board has been exercised, and not abused. The discretion of the court is not to be substituted for that of the excise board. The legislature has lodged such discretion with the board, and it should remain there, except in a clear or an extreme case of abuse.''

In line with this authority, it appears that the ordinance of Boise City has lodged with the council the right and power to determine the fitness of an applicant for a license, and unless the action of the council clearly appears to have been arbitrary or illegal, the judgment of the court will not be substituted for the judgment of the city council. So we might continue to review the authorities relied upon by respondents, but an examination of such authorities, in our opinion, conclusively shows that they do not support the contentions made by counsel for respondent as applied to the facts appearing in the affidavit for the writ in this case.

It is now recognized as the law of this state that no person has any vested or inherent right to engage in the sale of intoxicating liquors, and that the business is entirely under the control of the state, and the legislature having vested the city of Boise with the power to license, tax, regulate, control and restrain the business, the power, to the extent of the grant thus vested, will not be reviewed or interfered with by the courts as long as the council in exercising such power does not run counter to the provisions of the constitution and laws of the state. (*Gillesby v. Board of Commrs., ante,* p. 586, 107 Pac. 71.) It is alleged in the affidavit that the council refused to grant the petitioners a hearing upon their application, and because of such fact it is claimed the action of the council was arbitrary. Referring to the ordinance, how-

ever, we find that it does not provide for a hearing upon an application for a license, and under the ordinance the respondents were not entitled to a hearing, and it was entirely within the power of the council to satisfy themselves in such manner as they saw fit as to the fitness or qualifications of the applicant. They might have had a hearing and upon such hearing determined the fitness of the applicant. They may have learned through their police officers or had personal knowledge which enabled them to form the conclusion that the applicants were not fit persons, and under the ordinance they were not confined to any particular or specific method to be pursued, in informing themselves of the facts which would enable them to form the opinion upon which they were authorized to act in granting or refusing the license. It was sufficient that they were of the opinion that the applicants were not fit persons to engage in the liquor business. The fact that under this ordinance they might be of the opinion that one applicant was fit and another unfit to receive a license, and because they denied a license to the person they deemed unfit would not make their action discriminatory or arbitrary. If the matter was subject to review by the court, the court would be placed in the same position and might determine one applicant unfit and another fit, and yet the action of the court would not be arbitrary or discriminatory.

It is also contended that if the council of Boise City is vested with authority to determine who is a fit person to receive a license, the result would lead to a prohibition of the business entirely. It should be remembered, however, that the fact the council may decide that an applicant is an unfit person to receive a license does not amount to a prohibition of the business. This is merely prohibitory as to the person deemed by them to be unfit to carry on such business, but is not prohibitory of the business. From the allegations of the complaint it appears that such action of the council has not resulted in the prohibition of the liquor business in Boise, for it is alleged in the affidavit that there are twenty-seven retail liquor houses to whom license has been issued. It certainly cannot be contended upon reason that this number

will be unable to supply sufficient liquors to assuage the thirst of the citizens of this city or deny any citizen the opportunity to secure all the liquor necessary or required to satisfy his appetite or stimulate him to action. It might be suggested in this connection that if these twenty-seven liquor houses are in any way handicapped in their ability to supply their customers, it would be only necessary to increase the number of employees or servants to supply the call and demand for intoxicating drinks, and by this simple method it would seem that everybody would be enabled to be fully supplied, and all thirst appeased.

Whether the council has power, under the charter, to pass an ordinance absolutely prohibiting the licensing of liquor houses within the city is not involved in this case, and if a fit or suitable person, in the opinion of the council, does not apply for a license, and thereby no one engages in the business, to be most generous we might assign as a reason the reluctance of people generally to engage in the business because of its nature or character, rather than that the council acted arbitrarily and capriciously in denying a license to those who do apply. We are satisfied that the application for a writ of mandate did not state facts sufficient to entitle the applicants to the writ, and that the court erred in overruling the demurrer to the affidavit.

The judgment is *reversed* and the trial court directed to sustain the demurrer to the application. Costs awarded to *appellants.*

Sullivan, C. J., and Ailshie, J., concur.

Petition for rehearing denied.