504 P.2d 818

**CRAIG H. HISAW, INC., Plaintiff-Appellant,**

**v.**

**C. D. BISHOP, dba Bishop Drilling Company, Defendant-Respondent,**

**v.**

**CRAIG H. HISAW, INC., et al., Counter-Defendants.**

**No. 11042.**

Supreme Court of Idaho.

Dec. 29, 1972.

Lawrence H. Duffin, Burley, for appellant.

Thomas H. Church, Burley, for appellee.

SHEPARD, Justice.

This is an appeal from a judgment and from an order denying a new trial. Bishop drilled wells for Hisaw under a written contract and when not paid filed a lien. Hisaw then filed this action, seeking to quiet title to the land and to have Bishop's lien declared void. Bishop counter-claimed for foreclosure of the lien. The district court rendered judgment in favor of Bishop. We affirm.

In November 1969 defendant-respondent, C. D. Bishop (hereinafter Bishop) agreed to drill two wells on land owned by plaintiff-appellant, counter-defendant, Craig H. Hisaw, Inc. (hereinafter Hisaw). The terms of that contract are not in dispute.[1]

Bishop drilled and completed the first well to a depth of 1,051 ft. and it successfully produced water. Bishop then started drilling the second well. During the drilling of the two wells they were tested five times—two tests on the first well and three tests on the second well. Hisaw ordered these tests which were conducted by Layne Pumps, Inc. It was during the third test performed on the second well that problems and difficulty arose which ultimately resulted in this litigation.

During the first two tests of the second well, the test bowls (i. e., the impellers of the turbine pump which drive water up the test pump shaft) were set less than 300 ft. below ground. Prior to the disastrous third test Bishop told Hisaw that the test pump bowls should not be set at more than 300 ft. below ground because there would then be a danger of collapsing the well casing. Hisaw then met again with Layne Pumps, Inc. and the pump bowls were set for testing at the 600 ft. level below ground. The trial court found that Hisaw directed and controlled all testing operations. This finding of the trial court has been assigned as error; however, it is supported by substantial, although conflicting evidence, and will therefore not be disturbed. Ivie v. Peck, 94 Idaho 625, 495 P. 2d 1110 (1972).

During the said third test on the second well, the pump ran for a short time and then malfunctioned to the extent it had to be disengaged from the engine. Layne Pumps, Inc. was unable to pull its test pump from the well shaft. On June 10,

---

1.  A.  That each of the two wells would have at least an 18 inch hole at a depth of 500 feet.
    B.  That each well would be cased to 500 feet, not less than 18 inch casing.
    C.  In the event a sufficient water supply was not discovered or produced in the first well, there would be no drilling of a second well.
    D.  That in the event the first well drilled was a dry hole, the successful bidder would be paid within ten days after the completion of the hole.
    E.  In the event a sufficient water supply was produced from the first well, drilling would immediately commence on the second well.
    F.  That the casing would not be perforated in either of the two wells above the 500 foot level.
    G.  That the price for the drilling and casing of said wells would be $13.00 per foot.

1971, Layne Pumps attempted to remove the pump with hydraulic jacks and the test pump column pulled apart at the 384 ft. level below ground, leaving the rest of the column and the pump in the well shaft. Evidently the steel casing inside the well shaft had collapsed. It is suggested that unequal pressures were created by the test pump which drew the water down inside the well shaft below the 350 ft. level, while the water outside the well shaft remained at approximately the 50 ft. level.

Bishop kept his drilling rig over the hole until June 16, 1970. At that time when he had received no further instructions from Hisaw other than that he, Bishop, would not be paid for the second well, he removed his rig. On June 18, and June 20, 1970, Bishop's men returned to the site and capped and sealed the well shaft.

On September 16, 1970 Bishop filed his notice of claim of lien pursuant to §§ 45–501, 45–507, I.C. Bishop claimed a lien on Hisaw's wells and surrounding land for the unpaid balance due under the drilling contract. As aforesaid, Hisaw responded by filing this action on November 13, 1970 seeking to quiet title to the land and also seeking to have Bishop's lien declared void.

The district court found, and Hisaw assigns as error, here, the proposition that Bishop's lien was timely filed. Hisaw contends that the lien was not timely filed within 90 days of the completion of the work. Bishop contends, on the other hand, that the capping and the sealing of the second well, which was carried out on June 18, and 20, 1971 are points in time from which the 90 days should be calculated. Hisaw contends that the work performed on June 18 and 20 was minor and trivial and that the work was substantially terminated on June 16 when Bishop removed the well drilling rig.

It has long been a rule of this Court that minor or trivial work is not sufficient to extend the time within which to file a lien. H. W. Johns-Mansville Co. v. Allen, 37 Idaho 153, 160, 215 P. 840 (1923). However, it is our opinion that capping and sealing of a completed well is not minor or trivial work. *See:* Minimum Well Construction Standards (Idaho Water Laws and Regulations, Vol. I) promulgated by the Department of Water Administration pursuant to the legislative mandate in Section 42–238(4), I.C.[2]

Hisaw directs our attention to Sec. 11 of the Minimum Well Construction Standards which merely *suggests* the capping and sealing of abandoned wells. As this Court has recently stated in Summers

2. 3.2 Casing
 a. Casing or cement curbing shall be installed in every well and it shall extend at least 12 inches above the average land surface surrounding the well. Upon completion of the well the top of the casing shall be covered with a plate welded in place, or a threaded cap. In every instance where well casing is required by the minimum well construction standards, it shall be of steel in new, or like-new condition, and be free of pits and breaks. When casing lengths are joined together, they shall be joined together by welded joints or screw couple joints which shall be water tight. The weld shall be at least as thick as the wall thickness of the well casing. When the diameter of the casing is reduced, the annular space between the two casings shall be made water tight. The provision above relating to pits in the casing and the specifications below 'Nominal Wall Thickness' will be enforced allowing a 12.5% manufacturing tolerance. All casing used shall meet the following minimum specifications:
 3.3 Seal of Casing
 a. General. Well casings shall be sealed to prevent the possible downward movement of contaminated surface waters in the annular space around the well casing. They shall also be sealed to prevent the upward movement of artesian waters within the annular space around the well casing that could result in the waste of ground water. The sealing is also to prevent the movement of ground water either upward or downward from zones that have been cased out of the well because of poor quality or other reasons. In wells where the following described methods of sealing do not seem to apply, special sealing procedures can be approved by directive from the Director of the Department of Water Administration, upon written request by the driller.

v. Dooley, 94 Idaho 87, 481 P.2d 318, 320 (1971):

> "* * * Whether a statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other."

Examination of § 42–238, I.C. reveals that every well drilled after July 1, 1967 shall be drilled in compliance with the Minimum Well Construction Standards promulgated by the Department of Water Administration. Penalties for failure to comply therewith are provided, including loss of a driller's license. We note further the stated purpose of the Minimum Well Construction Standards is as follows:

> "1.2 Section 42–237a and sections 42–1601–1605, Idaho Code, requires all flowing wells to be capped or equipped in a manner that will allow the flow of water to be completely stopped when not in use. Flowing and non-flowing wells are to be constructed in a manner as to prevent waste and contamination of ground waters through leaky wells, casings, pipe fittings, valves or pumps, either above or below the land surface."

It is our opinion that Rule 1.2, *supra,* when read in *pari materia* with Rules 3.2 and 3.3a, together with the statute manifests an intention to prevent contamination of ground water from an unsealed well. The requirement that completed wells be capped and sealed is a method of achieving that objective. Therefore, we find that Bishop had a mandatory duty to cap and seal the second well, which duty was performed on June 18 and June 20, 1970. It then follows that the lien filed on September 16, 1970 was timely as filed within 90 days of the completion of the work on the well.

We therefore affirm the trial court's finding that the filing of the lien was timely, that Bishop was entitled to foreclosure of the lien.

Following judgment, Hisaw moved under Rule 59 I.R.C.P. for a new trial on the basis that there was newly discovered evidence in the form of 380 ft. of well casing which Hisaw had pulled from the well following trial.

Section 10–602(4), I.C. authorizes the granting of a new trial upon the basis of:

> "4. Newly discovered evidence, material for the party making the application, *which he could not, with reasonable diligence, have discovered and produced at the trial."* (Emphasis supplied.)

We note that the granting of a motion for a new trial lies within the sound discretion of the trial court, and an order denying a motion for a new trial will be overturned only upon a showing of an abuse of discretion by the trial court. Findley v. Woodall, 86 Idaho 439, 446, 387 P. 2d 594 (1963).

> "* * * The general rule is that in order to warrant the granting of a new trial on the ground of newly discovered evidence it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issues; and (5) that it is not merely cumulative or impeaching." Livestock Credit Corp. v. Corbett, 53 Idaho 190, 198, 22 P.2d 874, 877 (1933); cited with approval in Friedman Bag Co. v. F. E. Baldwin & Co., 57 Idaho 607, 623, 68 P. 2d 43 (1937).

Applying these standards to the instant case, it is clear that if Hisaw could have, or should have, produced the well casing at or before trial, then, and in that event, the trial court did not err in denying the motion for a new trial. Hisaw's original complaint indicated that his action was founded on the theory that "the failure of said well resulted from the negligence of defendant in obtaining or installing defective casing inserted in said well by defend-

ant." Bishop left the well site on June 20, 1970 and never returned. The matter came on for trial on June 17, 1971, nearly one year later. During the intervening period of time, Hisaw, by his own admission, made no effort to pull the well casing. Even the exercise of the most minimal diligence, in view of the allegations of the complaint, would have resulted in the casing being pulled in order to substantiate his cause of action. It is our opinion that with the exercise of due diligence such allegedly "newly discovered" evidence should have been unearthed before trial.

We affirm the trial court's denial of Hisaw's motion for a new trial. Appellant Hisaw also assigns as error numerous findings of fact by the trial court. We have thoroughly examined the record and we find that these findings are supported by substantial competent evidence such as to prevent us from holding the findings clearly erroneous. Rule 52(a), I.R.C.P. We will not set aside findings of fact unless they are clearly erroneous. Johnson v. Sweeney, 91 Idaho 805, 808, 430 P.2d 883 (1967).

Furthermore, findings of fact by the trial court which are supported by substantial, though conflicting, evidence will not be disturbed on appeal. Ivie v. Peck, 94 Idaho 625, 495 P.2d 1110 (1972); Lay-rite Products Co. v. Lux, 91 Idaho 110, 416 P.2d 501 (1966); Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414 (1962). Our ex-amination of the record reveals that the trial court's findings are supported by substantial though conflicting evidence and they are therefore affirmed.

Finally, appellant assigns as error the trial court's refusal to apply the doctrine of *res ipsa loquitur* to the facts of this case. In this regard, we have often said that:

"A plaintiff seeking to invoke the doctrine of res ipsa loquitur must show: (1) *that the agency or instrumentality causing the injury is under the control and management of the defendant;* and (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence." (citations omitted; emphasis supplied) Whitt v. Jarnagin, 91 Idaho 181, 187, 418 P.2d 278, 284 (1966).

The doctrine of *res ipsa loquitur* is inapplicable to the instant case since we have affirmed the trial court's findings, which include the determination that Hisaw had exclusive direction and control over the testing operations.

The judgment of the district court is in all respects affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.