511 P.2d 792

**READY–TO–POUR, INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**Leonard B. McCOY, as Building Inspector of the City of Ketchum, et al., Defendants-Appellants,**
**and**
**W. E. Murphy et al., Third Party Intervenors and Appellants.**

**No. 10713.**

Supreme Court of Idaho.

July 3, 1973.

E. Lee Schlender, Ketchum, for defendants-appellants.

Alexanderson, Davis, Rainey & Whitney, Caldwell, for third party intervenors-appellants.

George R. Kneeland, Ketchum, for plaintiff-respondent.

SHEPARD, Justice.

This case involves a Ketchum zoning ordinance establishing an industrial district and an attempt to locate a concrete batch plant therein. The City refused to issue a permit for the construction of the plant and thereafter the City eliminated the industrial zone. The trial court found that the City had acted capriciously and arbitrarily in refusing to issue a building permit. The court issued a writ of mandate commanding the issuance of the permit. We affirm.

On July 6, 1965 the City of Ketchum adopted a comprehensive zoning ordinance (Ordinance No. 85), which, among other things, set aside and authorized a six acre parcel for and as an industrial district. A portion thereof provided:

"SECTION X

"I. INDUSTRIAL DISTRICT

"10.1 USES PERMITTED

"(1) Any industrial or manufacturing operation which does not create danger to the safety of employees and residents in surrounding areas and does not cause substantial amounts of offensive noise, vibration, smoke, odors, heat, glare, or other objectionable influences to disseminate beyond the boundaries of the I District;

\* \* \* \* \* \*

"(3) The following uses shall be subject to the provisions of Section XI of this ordinance: automobile wrecking yards; junk yards; dumping or reduction operations; rendering plants; or any other use which might be especially obnoxious, offensive, hazardous or detrimental to the public health and welfare of the residents of the City of Ketchum."

The next following section of the ordinance enumerated certain uses that would only be permitted within that industrial district after they had been specifically approved by both the city planning and zoning commission and the City Council. The relevant portions of that section provide:

"SECTION XI

"USES PERMITTED BY SPECIAL REVIEW

"11.1 USES PERMITTED

"Due to their particular features, which may be injurious to the health, safety or welfare of inhabitants lcoated nearby, depending on environmental measures taken in each instance, the following uses shall be allowed in the designated zones only upon favorable recommendation of the Planning and Zoning Commission (with additional controls if necessary) and approval by the City Council:

\* \* \* \* \* \*

"(3) Reduction operations, dumping areas and rendering plants in the I District, provided:

"(a) a site plan of the proposed use is furnished; and

"(b) a written statement is provided explaining the methods which will be used to control adverse effects of the operation.

*	*	*	*	*	*"

A later portion of the comprehensive ordinance, Section 19.2 as it was in force in 1969 provides:

"No building shall be erected, moved or structurally altered unless a building permit therefore [sic] has been issued by the Building Inspector or his authorized representative and approved by the City Council or its designated councilman. All permits shall be issued in conformance with the provisions of this ordinance and shall be valid for a period of time not exceeding one year from the date of issue."

During the summer of 1969 Ready-to-Pour, Inc. purchased three lots in the industrial district for its concrete batch plant. The plant was then temporarily located in Sun Valley, approximately one mile distant. On July 5, 1969, Ready-to-Pour applied for a building permit pursuant to Section 19.2 *supra*. On July 9, 1969 the City Council denied that application. On July 16, 1969, Ready-to-Pour obtained an alternative writ of mandate directing Leonard B. McCoy, et al. (hereinafter the City) to show cause why they should not be ordered to issue a building permit for construction of the concrete batch plant. The City filed an answer to said alternative writ and certain citizens of Ketchum were granted leave to intervene as third party petitioners.

The parties then agreed to resubmit Ready-to-Pour's application to the City Council. The City Council heard testimony from many witnesses and viewed Ready-to-Pour's batch plant operation in Sun Valley. The City Council denied the application on the following grounds:

"1. That the proposed operation will cause substantial amounts of offensive noise, dust, increased traffic and other objectionable influences beyond the boundaries of the Industrial District.

"2. That the proposed operation would be especially obnoxious, offensive and detrimental to the public health and welfare of the residents of the City of Ketchum.

"3. That the City of Ketchum is essentially a resort and tourist service area as well as a primary residential area, because of which the proposed operation of Ready-to-Pour Concrete Co., Inc. would not be in harmony with the essential functions of the City, nor in keeping with the spirit, purpose and intent of Ordinance 85 of the City of Ketchum."

Minutes, Special Meeting, Ketchum City Council July 24, 1969.

On September 30, 1969, following notice and two public hearings the City Council adopted Ordinance 133 eliminating the industrial zone.

A trial was had in the district court on the issues thus joined. The trial court found and concluded that the City Council acted arbitrarily and capriciously and had abused its discretion in refusing to issue the building permit to Ready-to-Pour. The court issued a writ of mandate directing the City to grant the building permit. The City did not grant the permit as directed and thereafter, on May 18, 1970, the district court issued an order enjoining the City from taking any action against Ready-to-Pour in the event Ready-to-Pour should proceed with construction of its concrete batch plant.

The district court found that the proposed batch plant was a manufacturing operation as defined by Section 10.1(1) and was not a dumping, reduction or rendering operation within the meaning of Section 10.1(3).

The trial court reasoned that the proposed plant was not a nuisance *per se* but that the plant might constitute a nuisance *per accidens*. The court stated that, even if the plant were found to be a nuisance *per accidens*, the City could not refuse to issue the permit on that ground because the elements of the prospective nuisance could not be factually determined at the time of the permit application.

In its memorandum opinion the trial court stated that Ordinance 133, eliminat-

ing Ketchum's industrial district, had no bearing on Ready-to-Pour's application because Ready-to-Pour's rights should be determined under the law in effect at the time the application was made.

■ We consider first the threshold question as to whether the applicant's rights are to be measured under Ordinance 85 in effect at the time of the application, or under Ordinance 133 in effect at the time this case went to trial. Idaho has adopted the minority view that the applicant's rights are measured under the law in effect at the time of the application. *See:* McQuillin, The Law of Municipal Corporations, § 25.155 (3d ed.1965). In Ben Lomond, Inc. v. City of Idaho Falls, 92 Idaho 595, 601, 448 P.2d 209, 215 (1968), we stated:

"At least in those cases like the present one, in which no zoning ordinance was pending at the time an application for a building permit is filed, it is our opinion that an applicant is entitled to a building permit upon compliance with the then existing ordinance."

The elimination of the industrial zone in Ketchum by Ordinance 133 did not alter the applicant's rights to a building permit.

We turn now to the trial court's finding that the City abused its discretion in denying the building permit sought by Ready-to-Pour. The minutes of the City Council's special meeting on July 24, 1969, *supra*, set forth the three reasons for denial of the permit. We deem it necessary to review the evidence before the trial court. Two members of the City Council testified on behalf of the City. Their testimony demonstrates that they denied Ready-to-Pour's application because they felt the initial creation of the industrial zone was a mistake and because the applicant's batch plant should be banned from the City regardless of whether or not it conformed to the zoning ordinance. As an example, Witness Glenn, a City Councilman, testified as follows:

"Q. Am I correct in coming to the conclusion from what you are saying that, in fact, your objection to granting the permit is based upon an objection to having this plant in Ketchum, period, regardless of what the zoning ordinance might say about it?

"A. Well, that's about right."

Similarly, Witness Jewell, also a City Councilman, was questioned and answered as follows:

"Q. Ben, is it—was it your opinion on July 24th when you voted against the issuance of this permit that, in fact, the industrial area was a bad deal—a bad idea in Ketchum?

"A. Well, I don't think it's been my opinion and—that the area never was big enough and probably never, even in the beginning, should ever been designated an industrial area, * * * is certainly not an industrial site.

"Q. So, in fact—I think I am repeating myself—but, in fact, then, it was the size of this area and the fact that you didn't think it was suitable for industrial that gave rise to your voting against it?

"A. Right. I never did think it was a logical industrial area in the beginning particularly."

Uncontroverted testimony indicated that there were other batch plants located in the area; that the applicant's property was located almost immediately adjacent to the railroad right-of-way; that the City itself maintained a heavy equipment storage yard near applicant's property; that located immediately adjacent to applicant's property is a business facility upon which is unloaded, stored and re-loaded piles of sand, gravel and shale in approximately the same amounts contemplated by the applicant. The numbers and types of vehicles used in connection with said operation are not dissimilar to those of applicant.

Appellants City and intervenors contend on appeal that applicant's use violates Section 10.1 of the zoning ordinance. We note that the evidence is uncontroverted, that no untoward danger to the safety of the employees will be created. The only

**514**

purported danger to the residents in the surrounding areas is from the generation of increased traffic. One of the City's witnesses estimated that considering the estimated thousand vehicles per day utilizing the road serving the area, applicant's trucks would not create any substantial increased traffic count. That same witness testified that he did not feel the proposed plant would create objectionable vibration, smoke, odors, heat or glare.

The evidence was hotly contested concerning the relative amount of noise which would be produced by applicant's proposed plant and at what distance such noise would be offensive, if at all, beyond the limits of the industrial zone.

■ The trial court found that the operation of the plant would not violate any of the provisions of the zoning ordinance. Implicit in the trial court's decision are the determinations that any noise from the plant would be minimal and would not spread beyond the boundaries of the industrial district. As this Court has held innumerable times, since such determination was made on substantial although conflicting evidence, it will not be disturbed upon appeal. Schoenick v. Smalley, 93 Idaho 786, 473 P.2d 928 (1970); Hisaw v. Bishop, 95 Idaho 145, 504 P.2d 818 (1972); Ivie v. Peck, 94 Idaho 625, 495 P.2d 1110 (1972).

Appellants next suggest that Section 10.-1(3) and Section 11.1 of the ordinance require the applicant to secure favorable recommendation of the Planning and Zoning Commission and the City Council because applicant's operation is either a "dumping operation" or "dumping area." It is to be noted that the ordinance speaks in terms of operations which are "especially obnoxious, offensive, hazardous or detrimental to the public health and welfare * * *." Those are enumerated as "automobile wrecking·yards; junk yards, dumping or reduction operations, rendering plants."

■■ The district court ruled as a matter of law that the City Council's consideration of the permit application could not have been a special review under Section XI because the proposed batch plant was not a dumping or reduction operation. The court found that any dumping done in connection with the plant would only be incidental to the plant's operation. We might at this point engage in a semantic discussion as to the meaning of the term "dump," or "dumping operation." As set forth in Black's Law Dictionary, 4th edition, 1968, the term could be considered as an operation "unloading or dropping down or depositing something in an unshaped heap or mass," or as set forth in Webster's Third New International Dictionary: "to unceremoniously and irresponsibly dispose or discard." Such a discussion is not necessary, however, because the evidence relating to the surrounding area and its usages, and the context within which the phrase was used in the ordinance makes it clear that it intended a special prohibition against a refuse pile or what might be commonly called a city dump. The record substantiates the findings and conclusion of the district court in this regard.

■ This Court has continually upheld the validity of actions of zoning boards whenever they are free from capriciousness, arbitrariness or discrimination. There is a strong presumption in favor of the validity of actions of zoning boards and such presumption can only be overcome by a showing that the ordinance as applied is confiscatory, arbitrary, unreasonable and capricious. See: Idaho Falls v. Grimmett, 63 Idaho 90, 117 P.2d 461 (1941); Rowe v. Pocatello, 70 Idaho 343, 218 P.2d 695 (1950); State v. Clark, 88 Idaho 365, 399 P.2d 955 (1965); Cole-Collister Fire Protection District v. Boise, 93 Idaho 558, 468 P.2d 290 (1970).

■■ We hold that Ready-to-Pour has sustained its burden of proving that the City Council's action herein was confiscatory, arbitrary and capricious. We are not unmindful of the contentions of the City and intervenor that Ketchum is essentially a resort and a place of beauty. We agree. It may be that applicant's proposed opera-

tion will deter from the aesthetic values of the area. That, however, is a policy decision which was made by the City Council in 1965 when it enacted the ordinance authorizing the creation of an industrial district within the City of Ketchum. People are entitled to rely upon the law. The applicant purchased its property for the erection of its batch plant relying on the City Council's action creating an industrial district. The trial court heard the witnesses and viewed the operation of applicant's plant at Sun Valley. We therefore uphold the trial court's findings because they are based on substantial though conflicting evidence.

We return to appellants' contention that the trial court erred in concluding that the proposed plant did not constitute a nuisance *per se*, and on the record it could not be determined to be a nuisance *per accidens*. The trial court ruled that the plant's future effects on the community were not matters which could be determined at that time.

We agree that the State of Idaho has by statute and by common law granted cities broad powers to regulate nuisances of all varieties:

> "The power of a city to declare a nuisance is not limited to that which is a nuisance per se. It may also declare that a nuisance which is such in fact or per accidens." Rowe v. Pocatello, 70 Idaho 343, 348, 218 P.2d 695, 698 (1950). *See also* McQuillin, The Law of Municipal Corporations, § 24.325. (3d ed. 1965).

This argument is of no avail to appellants. The concise response is that the City has not so declared a concrete batch plant to be a nuisance, either *per se*, or *per*

*accidens*. In the event the City does so declare such plants to be a nuisance, another law suit may erupt. The action of the trial court at that particular juncture was obviously correct.

The judgment of the trial court is affirmed. Costs to the respondent.

McFADDEN, and BAKES, JJ., concur.

McQUADE, Justice (dissenting):

The Court in this case affirms the granting of a Writ of Mandate to compel issuance of a building permit. A Writ of Mandate will issue against a county or incorporated city on the refusal to issue a discretionary license only when such refusal is arbitrary and unreasonable.[1] The decision to deny Ready-To-Pour, Inc. a building permit in this case was not arbitrary and unreasonable, thus the Writ of Mandate was improperly granted.

There is a strong presumption in Idaho favoring the validity of zoning board actions.[2] A presumption of law is a rule requiring a court to draw a particular inference from a fact unless and until the truth of such inference is disproved.[3] The burden of proof is on the party attacking the zoning ordinance, at the district court level, to show that the ordinance, as applied to the property in question, was confiscatory, arbitrary, unreasonable and void.[4] The presumption favoring the validity of the zoning board action here has not been overcome, and Ready-To-Pour, Inc. has not met its burden of proof by showing that the ordinance, as applied, was confiscatory, arbitrary, unreasonable and void.

The majority opinion applies the rule that the applicant's rights to a building permit are to be measured under the law in effect at the time of the original permit

---

1. *See* Barth v. DeCoursey, 69 Idaho 469, 207 P.2d 1165 (1949); Darby v. Pence, 17 Idaho 697, 107 P. 484 (1910).

2. Cole-Collister Fire Protection Dist. v. City of Boise, 93 Idaho 558, 468 P.2d 290 (1970); Boise City v. Better Homes, Inc., 72 Idaho 441, 447, 243 P.2d 303 (1952).

3. Cole-Collister Fire Protection Dist. v. City of Boise, *supra*, note 2, 93 Idaho at 563; Black's Law Dictionary (4th ed. 1968).

4. Cole-Collister Fire Protection Dist. v. City of Boise, *supra*, note 2; Boise City v. Better Homes, Inc., *supra*, note 2.

**516**

application, here Ordinance 85. Since Ordinance 85 was in effect at the time of the application, this case can be distinguished from Ben Lomond, Inc. v. City of Idaho Falls.[5] In *Ben Lomond* the court held an applicant was entitled to a building permit upon compliance with the zoning ordinance existing at the time of the application. There was no zoning ordinance existing for the particular property in that case. Here there *was* a zoning ordinance in existence, and the City Council held that it was not complied with by Ready-To-Pour, Inc.

This Court stated as follows regarding zoning ordinances in Idaho Falls v. Grimmett[6]:

"The validity of zoning ordinances, passed in conformity with legislative authority, is now generally recognized as a proper and legitimate exercise of the police power.

"It must be conceded that, where a given statute admittedly presents a proper field for the exercise of the police power, the extent of its invocation and application is a matter which lies very largely in legislative discretion.

"Every presumption is to be indulged in favor of the exercise of that discretion, unless arbitrary action is clearly disclosed.

"It should be remembered that the adoption of zoning ordinances, and the regulation of the construction of buildings in various zones or districts, is the exercise of the *police power* of the municipality and is *purely governmental.*" (citations omitted.)[7]

In the more recent case of State v. Clark[8], the Court stated:

"The subject matter of the ordinance being within the police power, and properly belonging to the legislative depart-

ment of government, the courts will not interfere with the discretion, nor inquire into the motive or wisdom of the legislature."[9]

In view of the above principles, if the validity of the application of an ordinance to the *property in question* can be said to be fairly debatable, its validity must be upheld.[10] The extensive testimony taken at the district court hearing is evidence of the debatable nature of the testimony involved in this case. The majority opinion states that:

"The evidence was hotly contested concerning the relative amount of noise which would be produced by applicant's proposed plant and at what distance such noise would be offensive, if at all,. beyond the limits of the industrial zone."

The "evidence" the majority cites is that given at the district court level. This again emphasizes the debatable nature of the testimony given.

The district court should not have reheard the evidence the City Council considered unless there was a showing by Ready-To-Pour, Inc. that the Council acted in an arbitrary manner. An arbitrary action has been defined as "a refusal to consider the evidence introduced or to make essential findings without supporting evidence."[11] In the present case the City Council did consider the evidence and make essential findings. The Minutes of the Special Meeting of the Ketchum City Council held on July 24, 1969, show such consideration, stating in part:

"The City Council of the City of Ketchum, Idaho having had before it the application of Ready to Pour Concrete Co., Inc. for a building permit to construct a concrete mixing plant on certain property within the City of Ketchum, Idaho

---

5. 92 Idaho 595, 448 P.2d 209 (1968).

6. 63 Idaho 90, 117 P.2d 461 (1941).

7. *Id.*, 63 Idaho at 96, 117 P.2d at 463; *see also* Rowe v. Pocatello, 70 Idaho 343, 350, 218 P.2d 695 (1950).

8. 88 Idaho 365, 399 P.2d 955 (1965).

9. *Id.*, 88 Idaho at 375, 399 P.2d at 961.

10. *See* Cole-Collister Fire Protection Dist. v. City of Boise, *supra*, note 2, 93 Idaho at 564, 468 P.2d 290.

11. Inland Motor Freight v. United States, 36 F.Supp. 885, 887 (D. Idaho 1941).

and the Council having previous to the meeting viewed the present operation of Ready to Pour Concrete Co., Inc. located in Sun Valley, Idaho, and having considered the terms and conditions of Ordinance No. 85, the Ketchum Zoning Ordinance, and having further considered the proposals and views of Ready to Pour Concrete Co., Inc. and the protestants to the issuance of such building permit, the Council therefor finds:

"1. That the proposed operation will cause substantial amounts of offensive noise, dust, increased traffic and other objectionable influences beyond the boundaries of the Industrial District.

"2. That the proposed operation would be especially obnoxious, offensive and detrimental to the public health and welfare of the residents of the City of Ketchum.

"3. That the City of Ketchum is essentially a resort and tourist service area as well as a primary residential area, because of which the proposed operation of Ready to Pour Concrete Co., Inc. would not be in harmony with the essential functions of the City, nor in keeping with the spirit, purpose and intent of Ordinance No. 85 of the City of Ketchum."

An examination of the above reasons given by the City Council at the July 24, 1969 meeting indicates that there was no abuse of discretion in denying the building permit sought by Ready-To-Pour, Inc. Of the three reasons for denying the permit, two were directly connected to Ordinance 85. The first reason was:

"1. That the proposed operation will cause substantial amounts of offensive noise, dust, increased traffic and other objectionable influences beyond the boundaries of the Industrial District."

This is the same language found in § 10.-1(1) of Ordinance 85, which stated:

"10.1 USES PERMITTED

"(1) Any industrial or manufacturing operation which does not create danger to the safety of employees and residents in surrounding areas and does not cause substantial amounts of offensive noise, vibration, smoke, odors, heat, glare, or other objectionable influences to disseminate beyond the boundaries of the I District."

The finding by the City Council was a proper exercise of its legislative and quasi-judicial discretion. Ready-To-Pour, Inc. failed to show that this application of the ordinance was confiscatory, arbitrary, unreasonable or capricious.

The second reason for denying the permit given by the City can be sustained under §§ 10.1(3) and 11.1 of Ordinance 85. This second reason stated:

"2. That the proposed would be especially obnoxious, offensive and detrimental to the public health and welfare of the residents of the City of Ketchum."

Ordinance 85, §§ 10.1(3) and 11.1 read in pertinent part:

"10.1 USES PERMITTED

.    .    .    .    .    .

(3) The following uses shall be subject to the provisions of Section XI of this ordinance: automobile wrecking yards; junk yards; dumping or reduction operations; rendering plants; or any other use which might be especially obnoxious, offensive, hazardous or detrimental to the public health and welfare of the residents of the City of Ketchum."

"USES PERMITTED BY SPECIAL REVIEW

"11.1 USES PERMITTED

"Due to their particular features, which may be injurious to the health, safety or welfare of inhabitants located nearby, depending on environmental measures taken in each instance, the following uses shall be allowed in the designated zones only upon favorable recommendation of the Planning and Zoning Commission (with additional controls if necessary) and approval by the City Council:

.    .    .    .    .    .

**518**

"(3) Reduction operations, dumping areas and rendering plants in the I District, provided:

"(a) a site plan of the proposed use is furnished; and

"(b) a written statement is provided explaining the methods which will be used to control adverse effects of the operation. . . ."

Reading the second reason for denying the petition in connection with the above sections of Ordinance 85 shows again that the City Council did not abuse its judicial discretion.

The second reason for denying the permit should be read in light of the admonition of this Court in Idaho Falls v. Grimmett,[12] that:

"Every presumption is to be indulged in favor of the exercise of that discretion, unless arbitrary action is disclosed."

The denial of the permit was thus properly accomplished pursuant to the ordinance in effect at the time of the application. Because of this it is unnecessary to enter into a discussion of nuisance *per se* or nuisance *per accidens*. Even if the proposed plant would neither be a nuisance *per se* or a nuisance *per accidens,* it could still be subject to regulation by a zoning ordinance.[13]

The majority opinion allows the district court to act in a review capacity by allowing retrial of facts which were heard by and were within the discretion of the City Council to determine their relevancy to legislation. Such procedure does not properly ascertain if the City Council acted arbitrarily or capriciously. The Writ of Mandate should have been denied in absence of a showing that the City Council's refusal to issue the building permit was arbitrary and unreasonable. I must, therefore, respectfully dissent.

DONALDSON, C. J., concurs in the dissent.

12. *Supra*, note 6.

13. *See* C.S. Rhyne, Municipal Law, § 32–36, p. 926 (1957).